UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SALLEH D.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

**DECISION AND ORDER**

1:20-CV-01271 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Salleh D. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 13; Dkt. 16). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 13) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on October 24, 2017. (Dkt. 12 at 16, 80-81).[1] In his applications, Plaintiff alleged disability beginning January 18, 2016. (*Id.* at 16, 201). Plaintiff's applications were initially denied on February 1, 2018. (*Id.* at 106-13). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore on September 23, 2019, and continuing on January 16, 2020, in Buffalo, New York. (*Id.* at 31-79). On February 10, 2020, the ALJ issued an unfavorable decision. (*Id.* at 13-30). Plaintiff requested Appeals Council review; his request was denied on August 25, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

/

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ

determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. (Dkt. 12 at 18). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 18, 2016, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "multiple trauma fractures with pain, including right hip, right hand, right tibia, right patella status post closed reduction of the right hand with pins, open reduction internal fixation of the right acetabulum, neuropathic foot pain, hip bursitis, right foot drop." (*Id.* at 19). The ALJ also found that Plaintiff suffered from the nonsevere impairment of adjustment disorder with depressed mood. (*Id.* at 19-20).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 20). In particular, the ALJ considered the requirements of Listings 1.02 and 1.04 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff can] lift and carry up to 5 pounds occasionally with the right, dominant hand, can occasionally push and pull bilaterally, can never climb ladders, ropes or scaffolds, or work at unprotected heights or with hazardous machines or sharp objects, can never operate machinery, can never kneel, can never operate foot controls bilaterally, can frequently finger, handle and feel with the right, dominant hand, but cannot perform forceful handling or gripping, such as using a hammer or screwdriver, requires a cane for ambulation and balance, is limited to simple, routine work and can make simple workplace decisions due to his fluctuating pain levels.

(*Id.* at 20-21).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 24).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, office helper, cashier II, dowel inspector, food and beverage order clerk, and surveillance system monitor.  (*Id.* at 24-25).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 25).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand solely for calculation and payment of benefits, arguing that the ALJ erred in assessing the opinion of consultative examiner Dr. Nikita Dave and that her RFC assessment was consequently unsupported by substantial evidence.  The Court is not persuaded by this argument, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, Plaintiff contends that the ALJ "expressly rejected the only medical source statement in the file, that of Nakita Dave," and that she had "no basis for disregarding this opinion as there is not even a report cited from a non-examining physician to bolster her claim." (Dkt. 13-1 at 3-4). However, as Defendant correctly points out, Plaintiff's argument is factually inaccurate. In reaching her RFC conclusion, the ALJ cited to and found persuasive the opinion of state agency reviewing physician Dr. C. Krist, who opined that Plaintiff was capable of light work with additional limitations. (Dkt. 12 at 24; *see id*. at 98-103). Plaintiff's claim that the ALJ improperly rejected the only medical source opinion of record necessarily fails.

The Court further finds no reversible error in the ALJ's assessment of Dr. Dave's opinion. The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01,

at *5844 (Jan. 18, 2017). Because Plaintiff's claim was filed on October 24, 2017, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

Here, the ALJ explained that she did not find Dr. Dave's opinion persuasive because the moderate to marked limitations he identified were not consistent with the other evidence of record, including Dr. Krist's opinion and the medical evidence showing "generally normal range of motion, lack of tenderness and no distress." (Dkt. 12 at 23). The ALJ further explained that Dr. Dave's opinion was not supported by Dr. Dave's own examination of Plaintiff, during which Plaintiff was able to sit in and rise from a chair and get on and off the examination table without difficulty and demonstrated full grip strength bilaterally and only mildly impaired finger dexterity. (*Id*.; *see id.* at 432-33).

While Plaintiff has identified some evidence that he contends is consistent with Dr. Dave's opinion, "whether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." (citation omitted)).

Here, the ALJ's assessment of Dr. Dave's opinion is consistent with the record. In particular, as the ALJ correctly observed, on physical examination by Dr. Dave, Plaintiff was in no acute distress, had only a slightly diminished gait and a normal stance, was able to rise from his chair without difficulty, and needed no assistance in changing for the examination or getting on to or off the examination table. (Dkt. 12 at 431-32). Plaintiff further had full flexion, extension, and rotary movement bilaterally in his cervical spine, and full forward flexion and extension in his lumbar spine. (*Id*. at 432). Plaintiff's straight-leg raising test was negative, he had no tenderness, and he had a full range of motion in the shoulders, elbows, forearms, and wrists bilaterally. (*Id*.). He had a full range of motion in his left hip and full flexion and extension in his right hip, and external rotation to neutral of the right hip was associated with pain only at the end range. (*Id*. at 433). Plaintiff had a full range of motion in the left knee, no tenderness in his right knee joint despite a reduced range of motion, and his joints were stable. (*Id*.). Sensation was normal in his lower extremities with the sole exception of his right lateral leg. (*Id*.). He had only mild atrophy of his right calf and mild impairment of hand and finger dexterity on the right side, and

was able to zip, button, and tie bilaterally. (*Id.*). He had full grip strength bilaterally. (*Id.*). The ALJ was well within her discretion to conclude that Dr. Dave's opinion that Plaintiff had "moderate to marked limitations" in a substantial number of postural activities, as well as in sitting, standing, and walking, was inconsistent with and unsupported by these relatively mild findings.

Plaintiff also objects to the ALJ's observation that he had "sporadic treatment records" (Dkt. 12 at 24), arguing—without citation to any medical opinion—that the nature of his impairments lent itself only to sporadic treatment because "nothing else could be done other than to mitigate his constant pain" (Dkt. 13-1 at 4). However, as the ALJ observed in her decision, Plaintiff was referred for orthopedic follow-up, occupational therapy, and an EMG study of the right lower extremity, yet never pursued any of these options. (Dkt. 12 at 22). Accordingly, Plaintiff's contention that he could not pursue ongoing treatment is unsupported by the record.

Finally, Plaintiff notes that in October of 2016, Dr. Myron Glick stated that Plaintiff was "presently 100% disabled" and that Dr. Glick was "doubtful that he will ever fully recover from" a motor vehicle accident earlier that year. (Dkt. 13-1). It is unclear to the Court what Plaintiff believes the significance of this statement is. The Commissioner's regulations applicable to Plaintiff's claim expressly provide that "statements that [a claimant is or is] not disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c); *see also id.* § 416.920b(c). Further, it is clear that the ALJ did not find that Plaintiff had fully recovered from his motor vehicle accident. Instead, she included substantial limitations in her RFC finding.

It was ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case.  Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   January 3, 2022
         Rochester, New York